# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KIMM JONES and CHRISTINE JONES-COMBS, *h/w*, | |
| Plaintiffs, | NO. 3:06-CV-0738 |
| v. | (JUDGE CAPUTO) |
| CITY OF SCRANTON, SCRANTON POLICE DEP'T, OFFICER JOHN O'ROURKE, OFFICER JESSIE ROMANCHICK, OFFICER THOMAS MCDONALD, OFFICER DONALD HOFSUMMER, OFFICER ROBERT STELMAK, and OFFICER JOSEPH HARRIS, | |
| Defendants. | |

## **MEMORANDUM**

Presently before the Court is Defendants City of Scranton and the Scranton Police Department's Motion to Dismiss the Plaintiffs' Complaint. (Doc. 15.) For the reasons set forth below, the Motion to Dismiss will be granted. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.[1]

## BACKGROUND

The facts as alleged in Plaintiffs' Complaint are as follows.

Plaintiffs were members of a group tour run by the company Adventures Unlimited. (Doc. 1 ¶ 10.) The tour group arrived at the Hilton Scranton & Conference Center ("the

---

[1] The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331.

Hilton") on Friday, February 17, 2006, and were assigned a block of rooms on the fifth floor. (Doc. 1 ¶ 13.)

At or around 9:30 p.m. on February 18, 2006, Plaintiffs were in the hallway on the fifth floor of the Hilton along with one of the group leaders, Gregory Sanford. (Doc. 1 ¶ 15.) At or around that time, these individuals were approached by hotel manager Paul Scimes and another hotel employee and were asked where "the brawl" was located on their floor. (Doc. 1 ¶ 16.) In response, Gregory Sanford informed the manager that he had not heard any noise and that there was no fight or brawl occurring on that floor. (Doc. 1 ¶ 17.)

Shortly thereafter, two police officers entered the fifth floor hallway and began inquiring about the location of the fight. (Doc. 1 ¶ 18.) Gregory Sanford then assured these police officers that there was no fight on the floor. (Doc. 1 ¶ 19.) A few minutes later, four additional police officers, accompanied by a black K-9 dog, arrived on the floor. (Doc. 1 ¶ 19.) These officers approached Gregory Sanford and began pointing their fingers in his face, shouting loudly and demanding identification, which Mr. Sanford produced. (Doc. 1 ¶ 20.)

The police officers then attempted to grab Gregory Sanford, but were unsuccessful as he was able to enter room 502, which was not his own room. (Doc. 1 ¶ 21.) While Gregory Sanford was in room 502, Plaintiff Kimm Jones asked if he could speak to Gregory. (Doc. 1 ¶ 22.) The police officers told Plaintiff Kimm Jones to be quiet and proceeded to push him in the chest towards the hallway wall. (Doc. 1 ¶ 22.) Plaintiff Kimm Jones then exclaimed that he had asthma, but the same police officer again pushed him in the chest. (Doc. 1 ¶ 23.)

At that same time, Kimm Jones said that "none of this is necessary" and asked the

police officers why the K-9 dog was present.  (Doc. 1 ¶ 24.)  He was then told to "shut up" and that the dog was "trained to bite."  (Doc. 1 ¶ 25.)  Plaintiff Christine Jones-Combs, who was standing nearby, then stated "This is getting out of hand! My husband didn't do anything wrong!"  (Doc. 1 ¶ 25.)  A police officer then pushed Mrs. Jones-Combs into the wall, with his arm against her breasts, in an attempt to prevent her from reaching out to or touching her husband.  (Doc. 1 ¶ 27.)  This police officer then assisted another in pushing Mr. Jones against the wall and handcuffing him.  (Doc. 1 ¶ 28.)  At no time was Plaintiff Kimm Jones read his Miranda rights or told he was under arrest.  (Doc. 1 ¶ 29.)  The police officers then began shouting "Everyone out of the hall!", to which Mrs. Jones-Combs responded that she would not go anywhere without her husband.  (Doc. 1 ¶ 30.)

A short time later, Gregory Sanford left room 502 and proceeded to enter his own room.  (Doc. 1 ¶ 31.)  The police officers followed him, knocked on his door, and requested entry.  (Doc. 1 ¶¶ 31-32.)  Gregory Sanford admitted the police officers.  (Doc. 1 ¶ 32.)  He was then told by Defendant police officers that he must leave the hotel within thirty (30) minutes or face arrest.  (Doc. 1 ¶ 33.)

At this point, Plaintiff Kimm Jones was escorted in handcuffs from the elevator through the front lobby of the Hilton, and was placed into a police cruiser outside.  (Doc. 1 ¶¶ 36-37.)  Plaintiff Christine Jones-Combs was also escorted by the police officers out of the hotel, where she was told that her husband would be issued a citation for disorderly conduct.  (Doc. 1 ¶¶ 36, 38.)

On April 7, 2006, Plaintiffs filed their Complaint against Defendants City of Scranton, the Scranton Police Department, and six "John Doe" police officers.  (Doc. 1.)  Defendants City of Scranton and Scranton Police Department (hereinafter "the Municipal Defendants")

filed their Motion to Dismiss Plaintiffs' Complaint on May 11, 2006.  (Doc. 15.)  A Brief in Support of this Motion to Dismiss was filed by the Municipal Defendants on May 22, 2006. (Doc. 18.)  Plaintiffs filed a Brief in Opposition on June 6, 2006.  (Doc. 22.)  Defendants filed their Reply Brief on June 30, 2006.  (Doc. 25.)  On September 29, 2006, the Court issued an Order amending the caption of the case to replace the unnamed "John Doe" Defendants with the names of the now identified officers (hereinafter collectively referred to as "the Officer Defendants").  (Doc. 37.)

This motion is fully briefed and ripe for disposition.

## LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. Dismissal is appropriate only if, accepting all factual allegations in the complaint as true and "drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations in the complaint."  *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.,* 140 F.3d 478, 483 (3d Cir. 1998).

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint and matters of public record.  *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  The Court may also consider "undisputedly authentic" documents where the plaintiff's claims are based on the documents and the defendant has attached a copy of the document to the motion to dismiss.  *Id.*  The Court need not assume that the plaintiff can prove facts that

4

were not alleged in the complaint, *see City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 (3d Cir. 1998), nor credit a complaint's "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997).

When considering a Rule 12(b)(6) motion, the Court's role is limited to determining whether the plaintiff is entitled to offer evidence in support of the claims. *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). The Court does not consider whether the plaintiff will ultimately prevail. *See id.* In order to survive a motion to dismiss, the plaintiff must set forth information from which each element of a claim may be inferred. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The defendant bears the burden of establishing that the plaintiff's complaint fails to state a claim upon which relief can be granted. *See Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).

## DISCUSSION

Plaintiffs' Complaint alleges eight (8) counts. In Count I, Plaintiffs accuse the Officer Defendants of racial discrimination in violation of 42 U.S.C. § 1981. They further allege in Count I that the Municipal Defendants are liable for the actions of the Officer Defendants under a failure to train theory. Count II alleges that the Officer Defendants are guilty of assault and battery in violation of 42 U.S.C. § 1981. Again, Plaintiffs allege Municipal Defendants are liable under this cause of action via a failure to train theory. Count III alleges that the Officer Defendants unlawfully detained and investigated Plaintiffs in violation of 42 U.S.C. § 1983. Once again, Plaintiffs allege Municipal Defendants are liable for this cause of action under a failure to train theory. Count IV alleges that Officer Defendants are guilty

of false arrest or imprisonment in violation of 42 U.S.C. § 1983, and again allege that Municipal Defendants are liable for this cause of action because of their failure to train the Officer Defendants. Count V alleges a conspiracy between the Officer Defendants and the Scranton Police Department to commit the alleged acts, in violation of 42 U.S.C. §§ 1983 and 1985. Counts VI, VII, and VIII make the same allegations as Counts II, IV, and V, respectively, but under the applicable state–rather than federal–law.

### A.  A Suit Against a Police Department is a Suit Against the Municipality

It is well settled law in this Circuit that "[i]n § 1983 actions, police departments cannot be sued in conjunction with municipalities, because the police department is merely an administrative arm of the local municipality, and is not a separate judicial entity." *Padilla v. Twp. of Cherry Hill*, 110 Fed. Appx. 272, 278 (3d Cir. 2004) (quoting *DeBellis v. Kulp*, 166 F.Supp.2d 255, 264 (E.D. Pa. 2001)). Because the Scranton Police Department is merely an arm of the City of Scranton, all claims asserted against Defendant Scranton Police Department will be dismissed with prejudice.

### B.  Counts I, II, III, and IV - Failure to Train

For a municipality to be found liable under 42 U.S.C. §§ 1981[2] and 1983, a plaintiff must establish: (1) a deprivation of a constitutionally protected right that (2) results from a municipal policy, practice, or custom. *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 691-94 (1978). "Policy is made by an official statement of a 'decisionmaker possessing final authority to establish municipal policy,' and custom can be shown by the

---

[2] The Supreme Court held in *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 731-32 (1989), that Congress had intended 42 U.S.C. § 1983 to be the enforcement provision for 42 U.S.C. § 1981 and extended the *Monell* requirements to claims brought under that statute.

presence of a course of conduct that 'is so well-settled and permanent as virtually to constitute law.' " *Chernavsky v. Twp. of Holmdel Police Dep't*, 136 Fed. Appx. 507, 509 (3d Cir. 2005) (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)) (internal citations omitted).

A municipality's failure to properly train its employees and officers can constitute a "policy" actionable under § 1983 only where the failure amounts to a deliberate indifference to the rights of the impacted person. *Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997). This does not mean that municipal liability for failure to train can be predicated solely upon a showing that a city's employees could have been better trained or that additional training was available that would have reduced the overall risk of constitutional injury. *Canty v. City of Phila.*, 99 F. Supp. 2d 576, 581 (E.D. Pa. 2000) (citing *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1029-30 (3rd Cir. 1991)). Rather, there must be a deliberate or conscious choice by the municipality to not train before a municipality may be held liable under section 1983. *Reitz*, 125 F.3d at 145. Furthermore, evidence of an isolated incident is not sufficient to show the existence of a custom or policy. *See, e.g., Jones v. Berwick Area Sch. Dist.*, No. 94-1818, 1995 U.S. Dist. LEXIS 21164, at *8 (M.D. Pa., March 13, 1995). Isolated violations are not the persistent, often repeated, constant violations that constitute a custom or policy. *Id.* Lastly, a direct causal link between the policy or custom and the alleged constitutional violations must also be present. *Chernavsky*, 136 Fed. Appx. at 509.

In the present case, Plaintiffs allege a series of events in which a number of police officers violated their federal civil rights. In attempting to link the municipality and police

7

department to the actions of the officers, Plaintiffs state "Defendant police officers' actions were a result of ineffective police training policies and/or the absence of police department policies on the training and supervision of its officers." (Doc. 1 ¶¶ 44, 52, and 57.) While Plaintiffs argue that the allegations made in their Complaint lend support for such a claim, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell.*" *City of Okla. City v. Tuttle*, 471 U.S. 808, 822-23 (1985). In a case such as this one, where no unconstitutional policy is cited, more proof than a single incident is necessary to establish a municipal policy, practice, or custom. *Id.* Plaintiffs' Complaint has failed to make a showing that a municipal policy, practice, or custom existed that resulted in the constitutional violations alleged. Plaintiffs instead offer only a conclusory statement claiming that the alleged violations occurred as a result of ineffective training of the Officer Defendants by Municipal Defendants.

Accordingly, Defendant City of Scranton's Motion to Dismiss with respect to Counts I, II, III, and IV will be granted.

### C.  Count V - Conspiracy

In Count V of their Complaint, Plaintiffs allege that Defendant Scranton Police Department and the Officer Defendants conspired to intentionally pursue a meritless suspicion of a fight as a means of harassing Plaintiffs due to their race (Plaintiffs are African-American).

In order to state a claim under section 1985(3), Plaintiff must allege: "(1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons . . . [of] the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation

of any right or privilege of a citizen of the United States." *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 253-54 (3d Cir. 1999) (quoting *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997)); *see also Griffin v. Breckenridge,* 403 U.S. 88, 102-03 (1971).  Thus, a claim under section 1985(3) requires that there must be "some racial, or perhaps other class-based, invidiously discriminatory animus behind the conspirators' action."  *United Bhd. of Carpenters v. Scott*, 463 U.S. 825, 834 (1983).

In order to allege a conspiracy, Plaintiff need only meet the liberal pleading requirements of Rule 8 of the Federal Rules of Civil Procedure.  *Leatherman*, 507 U.S. at 168; *see also, e.g.*, *In re Bayside Prison Litig.,* 190 F. Supp. 2d 755, 765 (D.N.J. 2002) (citing *Ridgewood*, 172 F.3d at 253-54).  Rule 8 requires only a "short plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  Conclusory allegations of concerted action absent facts actually reflecting such action, however, may be insufficient to state a conspiracy claim.  *Abbott v. Latshaw*, 164 F.3d 141, 148 (3d Cir. 1998), *cert. denied*, 527 U.S. 1035 (1999); *see also Pellegrino Food Prods. Co. v. City of Warren*, 136 F. Supp. 2d 391, 409-10 (W.D. Pa. 2000).  In order to properly state a claim for conspiracy under 42 U.S.C. § 1985(3), Plaintiffs may not make "[b]are conclusory allegations of 'conspiracy' or 'concerted action,' " but are required to "expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such agreement can be inferred."  *Sayles v. Commonwealth of Pa. Dep't of Pub. Welfare, County of Monroe*, 24 F.Supp.2d 393, 398 (M.D. Pa. 1997) (citing *Flanagan v. Shively*, 783 F.Supp. 922, 928 (M.D. Pa.), *aff'd* 980 F.2d 722 (3d Cir. 1992), *cert. denied*, 510 U.S. 829 (1993)).  Such averments must include allegations of the "broad objectives [of the conspiracy and] the

role each defendant allegedly played in carrying out those objectives." *Id*. Plaintiffs in this case have not alleged the existence of any agreement to conspire against Plaintiffs, nor have Plaintiffs made an averment of any communication, consultation, cooperation, or command by or between Defendant Scranton Police Department and the Officer Defendants from which such an agreement can be inferred.

Plaintiffs fail to allege a conspiracy amongst the Defendants, since Plaintiffs offer only conclusory allegations of concerted action. Therefore, Defendant City of Scranton's motion to dismiss will be granted with regard to Plaintiffs' conspiracy claim (Count V) under section 1985(3).

### D. Counts VI, VII, and VIII - State Law Tort Claims

It is well established under Pennsylvania law that municipal defendants and their employees are immune from certain state-law tort claims via the operation of the Political Subdivision Tort Claims Act (PSTCA), 42 PA. CONS. STAT. ANN. §§ 8541 *et seq.* (2004). Municipal Defendants put forth the argument that they are thus immune under this statute from Claims VI, VII, and VIII of Plaintiffs' Complaint. The Court agrees.

The PSTCA provides that no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person. *Id.* A local agency includes any government unit other than the Commonwealth. 42 PA. CONS. STAT. ANN. § 8501. Immunity under the PSTCA is subject to two limitations. First, the PSTCA provides eight exceptions to the immunity defense.[3] 42

---

[3] The eight exceptions are: (1) vehicle liability; (2) care, custody or control of personal property; (3) real property; (4) trees, traffic controls and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; and (8) care, custody or control of animals.

PA. CONS. STAT. ANN. § 8542. None of these exceptions apply to the Plaintiffs' claims. Second, individual employees are not immune from liability when their conduct amounts to actual fraud, crime, actual malice, or willful misconduct. *See* 42 PA. CONS. STAT. ANN. § 8550 n.17. Since the present motion to dismiss was not made by the Officer Defendants, however, this limitation is not applicable to the Court's analysis of this motion.

Municipal Defendants argue that they are entitled to immunity under the PSTCA from Plaintiffs' state law tort claims. Because none of the alleged state-law tort claims (Counts VI, VII, and VIII) fall within the narrow class of statutory exceptions to immunity under the PSTCA, these Counts will be dismissed as to Defendant City of Scranton.

### CONCLUSION

For the reasons set forth above, the Court will grant Defendants City of Scranton and the Scranton Police Department's Motion to Dismiss. An appropriate Order will follow.

| | |
|---|---|
| November 7, 2006 | /s/ A. Richard Caputo |
| Date | A. Richard Caputo |
| | United States District Judge |

11

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KIMM JONES and CHRISTINE JONES-COMBS, *h/w*, | NO. 3:06-CV-0738 |
| Plaintiffs, | (JUDGE CAPUTO) |
| v. | |
| CITY OF SCRANTON, SCRANTON POLICE DEP'T, OFFICER JOHN O'ROURKE, OFFICER JESSIE ROMANCHICK, OFFICER THOMAS MCDONALD, OFFICER DONALD HOFSUMMER, OFFICER ROBERT STELMAK, and OFFICER JOSEPH HARRIS, | |
| Defendants. | |

## ORDER

**NOW**, this 7th day of November, 2006, **IT IS HEREBY ORDERED** that:

(1) Defendant Scranton Police Department's Motion to Dismiss (Doc. 15) is **GRANTED** as to all Counts of Plaintiffs' Complaint (Doc. 1), because a police department may not be sued in conjunction with the municipality to which it belongs.

(2) Defendant City of Scranton's Motion to Dismiss (Doc. 15) is **GRANTED** as to Counts I-IV of Plaintiffs' Complaint (Doc. 1) because Plaintiff has failed to allege the existence of a municipal policy, practice, or custom that led to the alleged constitutional violations.

(3) Defendant City of Scranton's Motion to Dismiss (Doc. 15) is **GRANTED** as to Count V of Plaintiffs' Complaint (Doc. 1) because Plaintiff has failed to properly allege the existence of a conspiracy between the Defendants.

(4)   Defendant City of Scranton's Motion to Dismiss (Doc. 15) is **GRANTED** as to Counts VI-VIII of Plaintiffs' Complaint (Doc. 1) because the City is entitled to an immunity defense under the Pennsylvania Political Subdivision Tort Claims Act for Plaintiffs' state-law tort claims.

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge