**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KIMM JONES AND CHRISTINE JONES-COMBS, | |
| Plaintiffs, | NO. 3:06-CV-0738 |
| v. | (JUDGE CAPUTO) |
| OFFICER JOHN O'ROURKE, et al., | |
| Defendants. | |

## MEMORANDUM

Presently before the Court is Defendants Officer John O'Rourke, Officer Jessie Romanchick, and Officer Robert Stelmak's Motion for Summary Judgment.  (Doc. 74.) Defendants' Motion for Summary Judgment will be granted in part and denied in part.  As the municipal defendants were previously dismissed from the case, no failure to train claim remains in Counts I, II, and III.  Such a failure to train claim does not create a claim for supervisory liability, as there were no allegations of any of the Defendants acting as a supervisor, nor was any evidence presented that any of the Defendants acted in a supervisory capacity.  Defendants' motion for summary judgment will be granted as to the Section 1981 claims in Counts I and II, because Plaintiffs have failed to present evidence of racial animus or discriminatory intent and conclusory allegations are insufficient at the summary judgment stage.  Defendants' motion for summary judgment will be granted as to Plaintiff Kimm Jones, as the guilty plea serves a probable cause for arrest in an unlawful detention claim.  Defendants Romanchick and Stelmak's motion for summary judgment will be granted as to Christine Jones-Combs, as there is no evidence of a

Fourth Amendment seizure by these Defendants.  However, there is a question of material fact as to whether a seizure occurred by Defendant O'Rourke, and therefore Defendant O'Rourke's motion for summary judgment will be denied.  Defendants' motion for summary judgment on the Count IV conspiracy claims will also be granted, as there is no evidence of any agreement or concerted action, or any evidence that could lead to an inference of an agreement or concerted action.

Defendant Romanchick's motion for summary judgment on Count V's assault claim will be granted as to Christine Jones-Combs, as there is no evidence that he placed her in imminent apprehension of harm or offensive contact.  Because there is a question of material fact regarding Defendant Stelmak's intent, and Christine Jones-Combs' imminent apprehension of harm or offensive contact, Defendant Stelmak's motion for summary judgment on the assault claim in Count V will be denied.  Defendant O'Rourke's motion for summary judgment on Christine Jones-Combs' assault claim will be denied, as there are questions of fact regarding whether there was imminent apprehension of harm or conduct, and whether there was intent on the part of Defendant O'Rourke. Defendants Romanchick and O'Rourke's motion for summary judgment on Count V's assault claim by Plaintiff Kimm Jones will be denied, as there are material questions of fact regarding Defendants' intent, as well as whether there was imminent apprehension on the part of Kimm Jones.  There is also a question of material fact as to whether the officers' use of force was reasonable in Jones' arrest.  Defendant Stelmak's motion for summary judgment will be granted as to Plaintiff Jones' assault claim, as there is no evidence that Mr. Jones was placed in imminent apprehension of harmful contact.

Defendants Romanchick and Stelmak's motion for summary judgment on Count

2

V's battery claim will be granted as to Plaintiff Christine Jones-Combs, as there is no evidence of physical contact between Jones-Combs and these Defendants.  Defendant O'Rourke's motion for summary judgment as to Jones-Combs' battery claim will be denied, as there are questions of material fact regarding whether he used force on the Plaintiff. Defendant Stelmak's motion for summary judgment on Plaintiff Kimm Jones' battery claim in Count V will be granted, as there is no evidence that this Defendant made contact with Plaintiff Kimm Jones.  Defendants O'Rourke and Romanchick's motion for summary judgment on Plaintiff Kimm Jones' battery claim in Count V will be denied, as there are questions of material fact regarding the reasonableness of force used in his arrest.  Defendants Romanchick, O'Rourke, and Stelmak's motion for summary judgment will be granted as to Plaintiff Christine Jones-Combs' false imprisonment claim in Count VI.  Defendants Romanchick, O'Rourke, and Stelmak's motion for summary judgment will be granted as to Plaintiff Kimm Jones' false imprisonment claim in Count VI.  Defendants Romanchick, O'Rourke, and Stelmak's motion for summary judgment will be granted as to Count VII, as Plaintiffs may not pursue a conspiracy claim against these Defendants due to the single entity doctrine.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 ("federal question jurisdiction") and 28 U.S.C. § 1367 ("supplemental jurisdiction").

## BACKGROUND

Plaintiffs Kimm Jones and Christine Jones-Combs were members of a ski trip staying at the Hilton Scranton and Conference Center during the weekend of February

3

17, 2006 through February 19, 2006.  (Pls.' Counterstatement of Undisputed Material Facts, ¶ 1, Doc. 86.)  Defendants John O'Rourke, Jessie Romanchick, and Robert Stelmak were, at the relevant times, on-duty police officers for the City of Scranton. (Defs.' Statement of Undisputed Material Facts in Supp. of Mot. for Summ. J., ¶ 1, Doc. 75.)

On February 18, 2006, at approximately 11:00 p.m., Defendants O'Rourke, Romanchick, and Stelmak responded to a call to the Scranton Police regarding a "large fight."  (Doc. 75 ¶ 2.)  The call did not describe the race of the individuals alleged to be involved in the fight.  (*Id.* ¶ 3.)  Defendant Officers Romanchick and O'Rourke were the first two officers to arrive at the scene.  (*Id.* ¶ 4.)  Upon arriving at the Hilton, they were directed to the fifth floor by hotel personnel.  (*Id.* ¶ 5.)

The scene and events that occurred on the fifth floor of the Hilton are highly disputed.  Plaintiffs state that Plaintiffs Kimm Jones and his wife, Christine Jones-Combs, along with Gregory Sanford, went tothe  fifth floor to retrieve a stereo.  (Doc. 86 ¶ 2.) After retrieving the stereo, the three (3) headed back to the Sanfords' room.  (*Id.* ¶ 3.)  On the way to the room, Mr. Jones and Mr. Sanford stopped to speak with Joseph Frazier, a hotel employee, before continuing to the room to drop off the stereo.  (*Id.* ¶ 4.)  After dropping off the stereo, Mr. Jones and Mr. Sanford reentered the hallway.  (*Id.* ¶ 5.)

Defendants state that as Officers Romanchick and O'Rourke arrived at the scene, they observed a loud group of individuals at the end of the fifth floor hallway.  (Doc. 75 ¶ 6.)  They noted that several individuals in the hallway were yelling, screaming, using obscene language, and causing noise.  (*Id.*)  However, Plaintiffs dispute this description,

4

and state that there was no commotion in the hallway at the time the police officers arrived, and that there was no fighting, arguing, or loud music being played.  (Doc. 86 ¶ 6.)  Plaintiffs also state that neither Mr. Jones nor Mr. Sanford were drunk or rowdy, and neither acted in a rude or obnoxious way to any of the hotel employees.  (*Id.* ¶ 8.)

Officers Romanchick and O'Rourke approached Mr. Jones and Mr. Sanford. According to Defendants, Officer Romanchick asked Gregory Sanford if there was a fight on the fifth floor, and Mr. Sanford responded by stating "Have you ever heard of a prank call?" (Doc. 75 ¶ 7.)  In contrast, Plaintiffs state that as the police approached, Officer Romanchick pointed a finger in Gregory Sanford's face, and exclaimed "You're not going to be disrespecting me." (Doc. 86 ¶ 9.)  Plaintiffs state that this occurred prior to any of the Plaintiffs speaking to the Defendants.  (*Id.*)  Plaintiffs state that the police officers never identified themselves by name to the Plaintiffs either during or after the altercation and arrest.  (*Id.* ¶ 24.)

The interaction between Plaintiff Kimm Jones and Mr. Sanford and Defendant Officers Romanchick and O'Rourke is also disputed.  Mr. Sanford attempted to explain that there was no fight going on, and that everything was under control.  (*Id.* ¶ 11.)  At that time, Mr. Jones attempted to intervene and speak up on Mr. Sanford's behalf (*Id.* ¶ 12.) However, the police officers would not permit Mr. Jones to speak to Mr. Sanford. (*Id.*)  According to Plaintiffs, as Mr. Jones attempted to speak to the officers, he was told to shut up.  (*Id.* ¶ 13.)  According to Plaintiffs, Mr. Jones did not yell or curse at the police officers.  (*Id.* ¶ 14.)  Mr. Joseph Frazier and Mr. John Monahan testified that they told the police that there was no fight or problem going on prior to the police officers approaching

and questioning the Plaintiffs.  (*Id.* ¶ 30.)  Plaintiffs point to the deposition of Officer

Stelmak, who stated that had people told him there was no fight, the police officers would

have left.  (*Id.* ¶ 32.)

In contrast, Defendants state that Mr. Sanford used profanity in front of the

officers, and specially said "Damn the police."  (Doc. 75 ¶¶ 8, 9.)  When Officer

Romanchick attempted to speak to Mr. Jones, Mr. Jones said to him "I don't care about

these fucking police."  (*Id.* ¶ 11.)  According to Defendants, Mr. Jones was

uncooperative, and then attempted to walk away from Officer Romanchick, stating "I don't

have to tell you nothing."  (*Id.* ¶ 14.)  When Officer Romanchick told Mr. Jones he was not

free to leave, Mr. Jones pulled away and said "Don't fucking touch me."  (*Id.*)  At that

point, Officer Romanchick struggled with Mr. Jones, placed him in handcuffs, and

explained that he would be detained while the incident was investigated.  (*Id.*)  Plaintiff

Jones continued to struggle with Officer Romanchick.  (*Id.*)

Plaintiff Jones' account differs from that of the police officers.  He states that the

officers pushed him against his chest, grabbed his arm, pushed him roughly against the

wall, and handcuffed him, without provocation.  (Doc. 86 ¶ 15.)  At that time, his face was

smashed against the wall.  (*Id.*)  Mr. Jones then asked the police officers why they would

do this to him, and told them that he had asthma.  (*Id.* ¶ 16.)  Mr. Jones also told the

police officers that the handcuffs were too tight and were hurting him, but the officers did

nothing.  (*Id.*)  According to Plaintiffs, Mr. Jones was compliant and did exactly as he was

told, and did not resist arrest.  (*Id.* ¶ 19.)  Christine Jones-Combs attempted to speak up,

but then an officer pushed her in the chest.  (*Id.*; Doc. 75 ¶ 35.)  She asked the officer

why he was holding her against the wall, and the officer released her.  (Doc. 75 ¶ 37.)

Mrs. Jones-Combs was held by the officer between one (1) and five (5) seconds.  (*Id.*)

Mrs. Jones-Combs was unable to identify the officer who pushed her besides the

description that he was a Caucasian male.  (*Id.* ¶ 36.)  She was not interrogated by any

police officers.  (*Id.* ¶ 41.)

Officer Romanchick called a "code red" and requested back up vehicles to keep

the crowd of people calm.  (Doc. 75 ¶ 12.)  At the time he called the "code red", the

hallway was crowded with people who were yelling or threatening Officers Romanchick

and O'Rourke.  (*Id.* ¶ 13.)

Officer Stelmak responded to the initial call of a large fight, and responded with

Scranton Police dog, Blitz.  (*Id.* ¶ 19.)  When he reached the fifth floor, Officer Stelmak

found that there was a loud and vocal crowd of people at the end of the hallway, and he

commanded Blitz to bark a few times to let people know there was a dog in the hallway.

(*Id.* ¶ 20.)  Officer Harris also responded to the initial call of a large fight.  (*Id.* ¶ 21.)

When he arrived the situation, people were yelling at each other and at the police.  (*Id.* ¶

22.)  Officer McDonald responded to the "code red" call.  (*Id.* ¶ 22.)  When he arrived, he

observed several persons being disorderly, loud, and making a lot of noise.  (*Id.* ¶ 22.)

Both Officers Stelmak and McDonald testified that by the time they arrived at the fifth

floor, Officers Romanchick and O'Rourke had already responded and were dealing with

the Plaintiffs.  (Doc. 86 ¶ 26.)  Sergeant Carroll also responded to the call at the Hilton,

and when he arrived, he found the hallway lined with people, some of whom were loud

and cursing.  (Doc. 75 ¶ 23.)

According to the Defendants, at the time when Officer Romanchick handcuffed Mr. Jones, several more males entered the hallway and began yelling profanities.  (*Id.* ¶ 15.) The crowd was large and became more boisterous towards the police, refused to return to their rooms, and were yelling profanities.  (*Id.* ¶ 15.)  Plaintiffs state that at no point did Christine Jones-Combs or Kimm Jones use profanity or yell at the police.  (Doc. 86 ¶ 20.) Rather, according to Plaintiffs, the police officers were yelling and cursing.  (*Id.* ¶ 21.)

After the arrest of Plaintiff Jones, Officer Romanchick led Mr. Jones downstairs through the lobby.  (Doc. 75 ¶ 16; Doc. 86 ¶ 23.)  Mrs. Jones-Combs requested to stay with her husband, and was permitted to do so.  (Doc. 75 ¶ 38.)  Officer Romanchick issued Mr. Jones a citation for disorderly conduct and released him to his wife, Christine Jones-Combs.  (Doc. 75 ¶ 16.)  Plaintiff Jones was found guilty of disorderly conduct, 18 PA. CONS. STAT. ANN. § 5503(a)(4), after a hearing on the charges, and did not appeal the conviction.  (*Id.* ¶ 27.)

Mrs. Michelle Sanford was in her room when the incident began, and opened her door to find "a lot of commotion in the hallway."  (Doc. 75 ¶ 29.)  Mrs. Sanford did not approach any of the officers or any of the other guests, but remained standing in the doorway.  (*Id.* ¶ 30.)  After Gregory Sanford returned to his hotel room, police officers knocked and asked to come into the room.  (*Id.* ¶ 31.)  Michelle Sanford answered the door, and told the officers that she was only going to allow one officer in the room, and the officers complied with that request.  (*Id.*)  Sergeant Carroll entered and spoke with Mr. Sanford in his room.  (*Id.* ¶ 24.)  The resultant conversation was the only interaction Michelle Sanford had with any police officers.  (*Id.*)  Mrs. Sanford stated that she was not

8

interrogated by any police officers, was not detained by any police officer, was not physically confronted by any police officer, and did not see any police officers pull, push or shove anyone.  (*Id.* ¶ 33.)

After the Hilton placed the initial 911 call, it placed another call to 911 attempting to cancel the call.  (Doc. 75 ¶ 25.)  According to the Defendants, even if the call had been cancelled or management had told the officers that there was no longer a problem, the officers had a duty to investigate.  (*Id.* ¶ 26.)

Plaintiffs Kimm Jones and Christine Jones-Combs both testified in their depositions that they felt the Defendants were motivated by racial animus, and if they had been Caucasian, the police officers would not have been as hostile, would have communicated more effectively, and would not have pushed them.  (Doc. 86 ¶¶ 35, 36.)

On April 7, 2006, Plaintiffs filed their Complaint against the City of Scranton, the Scranton Police Department, and six (6) "John Doe" police officers.  (Doc. 1.)  On September 29, 2006, the Court issued an Order amending the caption of the case to replace the unnamed "John Doe" Defendants with the names of the now identified officers, Officer John O'Rourke, Officer Jessie Romanchick, Officer Robert Stelmak, Officer Thomas McDonald, Officer Donald Hofsummer, and Officer Joseph Harris.  (Doc. 37.)  Defendants the City of Scranton and the Scranton Police Department were dismissed from the case on all counts on November 7, 2006. (Doc. 42.)  On January 4, 2008, the Court approved a stipulation dismissing Officers McDonald, Hofsummer, and Harris from the case.  (Doc. 83.)  The remaining Defendants are Officers O'Rourke, Romanchick, and Stelmak.

The present Motion for Summary Judgment was filed on December 10, 2007.  The

9

motion is fully briefed and ripe for disposition.

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law.  Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one.  *See id.* at 248.   An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party."  *Id.*

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law.  *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983).  The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All reasonable doubts as to the existence of a genuine issue of material fact must

be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party.  *See Hersh v. Allen Prods. Co.*, 789 F.2d 230, 232 (3d Cir. 1986).  Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law.  *See Anderson*, 477 U.S. at 256-57.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).  In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.

## DISCUSSION

### I.        Counts I, II, and III - Failure to Train Claims

Defendants O'Rourke, Romanchick, and Stelmak first argue that they should be granted summary judgment on Plaintiffs' failure to train claims in Counts I through III, as the City of Scranton and Scranton Police Department were dismissed from the case on November 7, 2006.  (Doc. 42.)  The failure to train claims against the municipality have been dismissed.  *See Monell v. Dep't of Soc. Servs. Of the City of N.Y.*, 436 U.S. 658, 691-94 (1978).  Failure to train claims are generally brought against a municipality, not individual defendants.

In *Brown v. Grabowski*, 922 F.2d 1097 (3d Cir. 1990), the Third Circuit Court of

Appeals noted that a failure to train case may be brought as a municipal liability claim or an individual capacity claim.  *Id.* at 1119.  The *Brown* case considered a suit against the Borough of Roselle, the Roselle Police Department, and Chief of Police of the Borough of Roselle.  *Id.*  Suit against the Chief of Police was brought in both his individual and official capacities.  *Id.*  The court noted that a claim could be brought against the Chief of Police in his individual capacity for failure to train and supervise his officers properly.  *Id.*

Essentially, such a failure to train claim would be considered a supervisory liability claim.  *See Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001).  First, Plaintiffs have not alleged that Officers Romanchick, Stelmak, or O'Rourke were in any kind of supervisory position.  Second, Plaintiffs have failed to present any evidence that any of these officers were in a supervisory position such that one failed to train or supervise the others.  Therefore, Defendants Romanchick, Stelmak, and O'Rourke's motion for summary judgment will be granted with respect to all failure to train claims in Counts I through III.

## II.    Counts I and II - Section 1981 Claims

Kimm Jones and Christine Jones-Combs, who are African-American, claim that the Defendants O'Rourke, Romanchick, and Stelmak committed racial discrimination and assault and battery against them in violation of 42 U.S.C. § 1981.  They argue that the Defendants interrogated and harassed the Plaintiffs even though no altercation had occurred or was occurring in the hotel.

Section 1981 states, in relevant part:

> All persons within the jurisdiction of the United States shall
> have the same right in every State and Territory to make and

12

> enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no others.

42 U.S.C. § 1981(a).  Section 1981 creates a civil cause of action against private actors and does not require state discriminatory action.  *Brown v. Philip Morris, Inc..*, 250 F.3d 789, 797 (3d Cir. 2001).

To establish a prima facie case under Section 1981, a plaintiff must establish three (3) elements: (1) the plaintiff is a member of a racial minority; (2) there was an intent to discriminate on the basis of race by the defendant; and (3) plaintiff was subject to an act of discrimination.  *Id.*  (quoting *Yelverton v. Lehman*, No. Civ. A. 94-6114, 1996 WL 296551, at *7 (E.D. Pa. June 3, 1997), *aff'd mem.* 171 F.3d 1012 (3d Cir. 1999)); *see also Warren v. Twp. of Derry*, Civ. A. No. 1:04-CV-2798, 2007 WL 870115, at *10 (M.D. Pa. Mar. 20, 2007) (Conner, J.).

Section 1981 cases are also subject to the burden shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Therefore, if a "plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the defendant's conduct."  *Schultz v. Wilson*, Civ. A. No. 1:04-CV-1823, 2007 WL 4276696, at *4, (M.D. Pa. Dec. 4, 2007) (Conner, J.). The burden then shifts to the plaintiff to demonstrate that the nondiscriminatory reason was prextext for discrimination.  *Id.*

Specifically, the Defendants assert that the evidence in the record fails to establish discriminatory intent as required by Section 1981.  "Because 'those with racist intentions

13

do not always verbalize their pernicious motives,' a plaintiff may prove discriminatory intent based on 'the totality of the circumstances.'" *Warren,* 2007 WL 870115, at *10 (citing *Whichard v. Cheltenham Twp*., Civ. A. No. 95-CV3969, 1996 WL 502281, at *8 (E.D.Pa. Aug. 29, 1996)).  The "totality of circumstances" may include disparate impact, departures from procedural norms, a history of discriminatory actions, and other relevant facts.  *Flagg v. Control Data*, 806 F.Supp. 1218, 1223 (E.D. Pa. 1992).  However, "[c]onclusory allegations of generalized racial bias do not establish discriminatory intent." *Id.*     Furthermore, disparate impact alone is insufficient, but rather the disparate impact must be traced to purposeful discrimination.  *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 389-91 (1982).

In the Middle District of Pennsylvania case *Schultz*, the court found that the plaintiffs failed to demonstrate sufficient evidence to survive a summary judgment motion regarding the inference of intent to discriminate based upon race.  2007 WL 4276696, at *4.  The court noted that the evidence indicated that the conduct dealt with preventing a potentially serious barroom brawl.  *Id.* at *5.  Although one of the defendants uttered a racial slur, the court found that it was an "isolated derogation," and that it was not directed at the plaintiffs, nor did the plaintiffs personally hear the offensive language.  *Id.*

Other cases from this Circuit have similarly refused to allow a claim to survive summary judgment without evidence regarding an inference to discriminate.  In *Warren*, Judge Conner of the Middle District of Pennsylvania granted in part and denied in part defendants' summary judgment motion.  The motion was denied as to a defendant who used a racial slur in connection with his action, but the motion was granted with respect to

a defendant who did not use a racial slur.  *See also Whichard v. Cheltenham Twp.*, 1996 WL 502281, at *8 (allowing a § 1981 claim to survive summary judgment when arresting officer yelled a racial epithet).

Similarly, in *Antoine ex rel. Antoine v. Rucker*, Civ. A. No. 03-3738 (DRD), 2006 WL 1966649, (D.N.J. July 12, 2006), the court denied summary judgment on the intent prong of a Section 1981 claim where plaintiffs were Haitian or of Haitian descent. According to witness testimony, a defendant police officer may have said "I'll teach you *American* law" in response to one student identifying himself as a law student.  In that instance, the court held that such a statement could sustain an inference of discriminatory intent or animus.

In *Brady v. Cheltenham Twp.*, Civ. A. No. 97-4655, 1998 WL 164994, *5 (E.D.Pa. April 9, 1998), Judge Yohn noted that "'Because this [§ 1981] claim requires proof of intent, an element difficult to establish, summary judgment should be granted with caution.'" *Id.* (citing *Bronze Shields, Inc. v. New Jersey Dept. of Civil Service*, 667 F.2d 1074, 1087 (3d Cir.1981)).  Although noting the difficulty of granting summary judgment on the intent element, the court granted summary judgment when a police officer described the plaintiff as "an elderly black woman."  *Id.*  The court held that "[a] mere descriptive phrase in which a police officer observes an individual's race in context with other identifying characteristics is not evidence from which racial animus may be inferred."  *Id.*  Beyond that statement, the court noted

> In the instant case, no issue of material fact exists regarding plaintiffs' allegations of racial animus. No evidence has been offered showing that these individual officers, their department, or Cheltenham Township has a history of

> discriminatory actions, or that their conduct has had a history
> of disparate impact on minority groups. No evidence has been
> offered showing that similarly situated white citizens have
> been treated differently. No evidence has been offered that
> supports a specific inference of racial animus, rather than a
> racially neutral disregard for the constraints of the Fourth
> Amendment.

*Id.* at *7 (citations omitted).  The court looked at these other facts, or rather lack theerof, and held that the evidence did not support the conclusory allegations of racial animus, which were insufficient to create a question of material fact for a jury.  *Id.*

In this case, Plaintiffs are African-American, and therefore satisfy the first element of being a member of a racial minority.  As to the second element of discriminatory intent, Plaintiffs argue that they have demonstrated evidence of a discriminatory animus on the part of the Defendants.  Specifically, Plaintiffs point to deposition testimony that the police officers were told that there was no fight, but continued to question the Plaintiffs upon their arrival at the Hilton's fifth floor. (Frazier Dep. 30:12-32:9, April 10, 2007, Doc. 87 Ex. 5; Monahan Dep. 33:1-34:19, April 10, 2007, Doc. 87 Ex. 13.)  Although this is disputed by the Defendants, the Court will view this evidence in the light most favorable to the non-moving party.  Plaintiffs also point to the fact that Officer Romanchick called a "code red", which they state is reserved for dire police situations.  (O'Rourke Dep. 36:14-22, April 19, 2007, Doc. 76 Ex. 11.)  However, Officer Romanchick's deposition offers a different description of the meaning of code red.  (Romanchick Dep. 44:18-24, April 19, 2007, Doc. 76 Ex. 12.)  In contrast, Officer Romanchick stated that "a code red is nothing more than priority of the channel, which means no officers with routine traffic should transmit on that zone.  Basically what I'm telling them is I want the air." (Romanchick Dep. 44:20-24, Doc. 76 Ex. 12.)

16

Plaintiffs also point to their own deposition testimony as evidence of discriminatory intent.  Mr. Kimm Jones and Mrs. Christine Jones-Combs stated in their deposition testimony that they believe that if they were Caucasian, that the police officers would not have been as hostile, would have communicated more effectively, and would not have pushed the Plaintiffs. (Jones Dep. 63:2-64:10, April 30, 2007, Doc. 87 Ex. 2; Jones-Combs Dep. 53:14-54:19, April 30, 2007, Doc. 87 Ex. 1.)

In this case, Plaintiffs have failed to demonstrate evidence of racial animus, directly or indirectly.  There is no indicia of racial animus on the part of these three (3) Defendants.  No Defendants made any direct statements that would lead to the inference that their actions were racially motivated.  None of the three (3) Defendants made any derogatory statements. At the time the Defendants received the call regarding the fight, there was no description of the race of the people involved.  In fact, there was testimony by police officers that there was no description as to the sex, race or number of people involved in the fight at the Hilton Hotel.  (Hofsummer Dep. 13:9-21, April 20, 2007, Doc. 76 Ex. 9.)

Similarly, there is no evidence presented by Plaintiffs to indirectly infer that the Defendants' actions were racially motivated.  Like *Brady*, the Plaintiffs have offered no evidence showing that the individual Officers Romanchick, O'Rourke, or Stelmak have a history of discriminatory actions.  Nor is there evidence that their conduct has had a history of disparate impact on minority groups. No evidence has been offered showing that similarly situated white citizens have been treated differently. As in *Brady*, no evidence has been offered that supports a specific inference of racial animus.  Plaintiffs' best evidence consists of statements by the Plaintiffs that they believe they would have

17

been treated differently had they not been African-American.  However, such a conclusory allegation is insufficient to survive the summary judgment standard.  At best, there may be a racially neutral disregard for the rights of the Plaintiffs and the other Hilton guests.  Therefore, summary judgment will be granted in favor of Defendants Romanchick, O'Rourke, and Stelmak on Plaintiffs Kimm Jones' and Christine Jones-Combs' claims in Counts I and II.

### III.      Count III - Section 1983 - Unlawful Detention and Investigation

Plaintiffs Kimm Jones and Christine Jones-Combs bring claims pursuant to 42 U.S.C. § 1983. "To establish a claim under § 1983, a plaintiff must allege (1) a deprivation of a federally protected right, and (2) commission of the deprivation by one acting under color of state law." *Lake v. Arnold*, 112 F.3d 682, 689 (3d Cir.1997).  A Section 1983 claim for unlawful detention, or false imprisonment, may be brought pursuant to the Fourth and Fourteenth Amendments.  *Potts v. City of Philadelphia*, 224 F. Supp. 2d 919, 936 (E.D. Pa. 2002).  Plaintiffs' Complaint, as well as their brief in response to the Defendants' summary judgment motion, reflects that this particular claim for unlawful detention was brought pursuant to the Fourth Amendment.

In order to prevail on an unlawful detention claim under Section 1983, Plaintiffs must demonstrate evidence that: (1) a Fourth Amendment seizure occurred, and (2) the seizure was without probable cause.  *Gavlock v. Deniker*, Civ. A. No. 4:04-CV-02447, 2005 WL 1273582, at *2 (M.D. Pa. May, 27 2005) (McClure, J.) (citing *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988)).

A person has been seized, within the meaning of the Fourth Amendment,  "only if,

in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980).  "[T]he protection against unreasonable seizures also extends to 'seizures that involve only a brief detention short of traditional arrest.'" *I.N.S. v. Delgado*, 466 U.S. 210, 215 (1984) (quoting *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975)).  In *Brower v. County of Inyo*, the Supreme Court took pains to emphasize the importance of the state actor's intention:

> a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied*.

489 U.S. 593, 596-97 (1989).  "[A] seizure occurs whenever an officer uses physical force or a show of authority to restrain a person's freedom to walk away, and a reasonable person would not feel free to walk away." *Gavlock*, 2005 WL 1273582, at *9.  "It is well established that 'a seizure does not occur simply because a police officer approaches an individual and asks a few questions." *United States v. Neal,* No. 06-4012, 2008 WL 821074, at *2 (3d Cir. Mar. 28, 2008) (non-precedential) (citing *Florida v. Bostick*, 501 U.S. 429, 434 (1991)).  Rather, the seizure also requires the show of authority or physical restraint.

Plaintiff Christine Jones-Combs' deposition states that an "officer . . . took his forearm and pushed me up against the wall and pinned me in my breast area against the wall." (Jones-Combs Dep. 32:6-9, April 30, 2007, Doc. 87 Ex. 1.)  She testified that she

could not identify the officer by name, and could only describe him as a Caucasian male. (Jones-Combs Dep. 32: 23, Doc. 87 Ex. 1.)  When pressed for an age, height, or other physical description, Mrs. Jones-Combs was unable to describe the officer.  (Jones-Combs Dep. 37:3, Doc. 87 Ex. 1.)  She did testify that the officer that pushed her was one of the two (2) officers that arrived first on the scene, who were Officers Romanchick and O'Rourke, as stated by the Defendants.  Mrs. Jones-Combs identified Officer Romanchick in an exhibit as the Defendant involved with her husband.  (Jones-Combs Dep. 84:14-18, Doc. 87 Ex. 1.)  She then stated that the officer who was with Officer Romanchick pinned her against the wall. (Jones-Combs Dep. 85:5-10, Doc. 87 Ex. 1.)  By inference, it would be possible for a jury to identify this officer as Defendant O'Rourke, who was the other officer with Officer Romanchick who first arrived at the scene.  Mrs. Jones-Combs testified that she asked the officer "'why are you holding me against the wall in my breast area?'  And that's when I guess he realized what he was doing, and he backed off."  (Jones-Combs Dep. 33:91-12, Doc. 76 Ex. 5.)  She testified that the time she was pinned against the wall was between one (1) and five (5) seconds.  (Jones-Combs Dep. 59:21-60:3, Doc. 76 Ex. 5.)

     In this case, there is a question of material fact as to whether a Fourth Amendment seizure occurred to Mrs. Jones-Combs.  The action occurred for between one (1) and five (5) seconds, and although she was released as soon as she asked why she was being pushed against the wall, brief detentions short of traditional of arrest may constitute a seizure.  A reasonable person may have believed that she was not free to leave.  Defendant O'Rourke's motion for summary judgment will be denied as to Christine Jones-Combs' unlawful detention claim.

Plaintiff Jones-Combs has failed to demonstrate evidence of a seizure within the meaning of the Fourth Amendment by Defendants Romanchick or Stelmak.  Mrs. Jones-Combs states that when the officers first arrived, she had no interaction with them until the officers allegedly pushed her husband.  (Jones-Combs Dep. 31: 12-15; 32 6-9, Doc. 87 Ex. 1.)  She testified that when her husband was handcuffed and arrested, she asked if she could go with him to the lobby, and the police allowed her to do so.  (Jones-Combs Dep. 38:4-6, Doc. 87 Ex. 1.)  She also admits that she was never interrogated by any of the police officers.  (Jones-Combs Dep. 56:16-17, Doc. 87 Ex. 1.)

No reasonable person would have believed that she was not free to leave under the circumstances faced by Mrs. Jones-Combs.  She requested to be allowed to accompany the police and her husband when he was arrested, and the police complied with her request.  She was never told that she was not allowed to leave.  Furthermore, she admits that she was never interrogated by any of the police officers in question.  No Fourth Amendment seizure occurred because no reasonable person would feel that she was unable to leave and there is no genuine issue of material fact that the officers intended to confine Mrs. Jones.  Therefore, Defendants Romanchick and Stelmak's motion for summary judgment on the unlawful detention and investigation claim by Plaintiff Christine Jones-Combs will be granted.

The Fourth Amendment claim by Plaintiff Kimm Jones fails based upon the probable cause element of the unlawful detention claim.  Presuming that Plaintiff Kimm Jones meets the first element of an unlawful detention requiring a Fourth Amendment seizure, he cannot establish the second element - absence of probable cause.  Plaintiff cites *Rhames v. Sch. Dist. Of Phildelphia*, Civ. A. No. 01-5647, 2002 WL 1740760 (E.D.

Pa. July 17, 2002) in an attempt to show that there is an issue of material fact as to whether probable cause existed to arrest Mr. Jones.  In *Rhames*, the plaintiff was involved in a fight at school, and the defense submitted an affidavit stating that the plaintiff admitted punching another student.  *Id*. at *3.  Because the plaintiff provided no evidence to dispute this, there was no genuine issue of material fact as whether probable cause for arrest existed and he could not survive summary judgment on his unlawful detention claim.  *Id*. at *3-4.  Plaintiff claims that unlike in this case, Mr. Jones has provided evidence that he was the "voice of reason" and was calm and unprovacative, thereby demonstrating evidence that there was no probable cause to arrest him.  (Br. in Opp'n, Doc. 88, at 23.)

Plaintiff's argument fails because, while the plaintiff in *Rhames* simply failed to provide evidence that no probable cause existed, Mr. Jones has admitted that there was probable cause for his arrest.  Despite claiming that after the police officers arrived, Mr. Jones was "a voice of reason during a hectic situation" and did not curse, yell, or provoke the officers, Mr. Jones plead guilty to a charge of disorderly conduct.  (Doc. 76 Ex. 2.) Therefore, Mr. Jones cannot claim unlawful detention because a guilty plea carries with it an admission of probable cause for arrest.  *Shilling v. Brush*, Civ. A. No. 4:05-CV-871, 2007 WL 210802, at *20 (M.D. Pa. Jan. 22, 2007) (Jones, J.); *Hamidian v. Occulto*, 854 F. Supp. 350, 354 (M.D. Pa. 1994) (Vanaskie, J.); *Brown v. Rogers*, Civ. A. No. 87-6419, 1990 WL 11657, at *1 (E.D. Pa. Feb. 08, 1990).  Because Mr. Jones plead guilty, acknowledging the probable cause for his detention and arrest, there is no genuine issue of material fact as to whether probable cause to arrest him existed.  Therefore,

Defendants Romanchick, O'Rourke, and Stelmak's motion for summary judgment on Plaintiff Kimm Jones' unlawful detention and investigation claim will be granted.

**IV.    Count IV - Conspiracy Pursuant to §§ 1983 and 1985**

In Count IV, Plaintiffs Kimm Jones and Christine Jones-Combs bring a claim pursuant to 42 U.S.C. §§ 1985 and 1983, alleging that the Defendants' conspired to pursue a meritless investigation of a fight, when no objective evidence supported the suspicion of a fight.

Section 1985(3) creates a statutory provision regarding conspiracy to deprive a person of his or her right to equal protection of the law on the basis of his or her race. Section 1985(3) makes actionable private conspiracies to deprive a citizen–on the basis of race–of the equal enjoyment of rights secured to all, and does not require action 'under color of state law.' *Griffin v. Breckenridge*, 403 U.S. 88 (1971).  To succeed under  § 1985(3), Plaintiffs must demonstrate evidence of: (1) a conspiracy; (2) motivated by a race-based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons of the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States. *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 253-54 (3d Cir. 1999) (quoting *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997)); *see also Griffin*, 403 U.S. at 102-103.

In alleging a Section 1985 conspiracy claim,

> The plaintiff's allegations must be supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each defendant allegedly played in carrying out those objectives. Bare conclusory allegations of

> "conspiracy" or "concerted action" will not suffice to allege a
> conspiracy. The plaintiff must expressly allege an agreement
> or make averments of communication, consultation,
> cooperation, or command from which such an agreement can
> be inferred.

*Flanagan v. Shively*, 783 F. Supp. 922, 928 (M.D.Pa. 1992) (McClure, J.), *aff'd* 980 F.2d

722 (3d Cir. 1992), *cert. denied*, 510 U.S. 829 (1993).  As discussed in this Court's

previous November 7, 2006 Memorandum and Order (Doc. 42), the Plaintiffs failed to

allege sufficient allegations of concerted action.  Furthermore, Plaintiffs have presented

no evidence regarding any concerted action.  No evidence has been presented regarding

any agreement, communication, consultation, cooperation, or command from which an

agreement could be conferred.  *See Collins v. Sload*, 212 Fed. App'x 136, 141-42 (3d Cir.

2007) (non-precedential) (holding that there was no conspiracy when the exhibits did not

support violations of a Section 1985).  As Plaintiffs have failed to present evidence of a

conspiracy by Defendants Romanchick, Stelmak, and O'Rourke, Plaintiffs' Section 1985

conspiracy claim fails, and summary judgment will be granted on the Section 1985 claim

in favor of all Defendants.

Under 42 U.S.C. § 1983, every person who, under color of state law, subjects any

citizen of the United States to the deprivation of any federal right shall be liable to the

party injured.  42 U.S.C. § 1983.  In order to establish a conspiracy claim against the

Defendants pursuant to Section 1983, there is a requirement of "(1) an actual violation of

a right protected under § 1983 and (2) actions taken in concert by the defendants with

the specific intent to violate the aforementioned right."  *Williams v. Fedor*, 69 F. Supp. 2d

649, 665 (M.D. Pa. 1999) (Vanaskie, J.), *aff'd* 211 F.3d 1263 (3d Cir. 2000) (citing *Kerr v.*

*Lyford*, 171 F.3d 330, 340 (5th Cir. 1999)).  "'To demonstrate a conspiracy under § 1983, a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law.'" *Id.* at 666 (citing *Parkway Garage, Inc. v. City of Phila.*, 5 F.3d 685, 700 (3d Cir.1993)).

As discussed previously, Plaintiffs Kimm Jones and Christine Jones-Combs have failed to demonstrate evidence of concerted action, an agreement, or any inference of an agreement between Defendants Romanchick, O'Rourke, and Stelmak.  Therefore, Defendants' motion for summary judgment will be granted as to the Section 1983 claim for conspiracy as to all Defendants.

## V.     Qualified Immunity

Defendants further argue that summary judgment should be granted on the basis of a qualified immunity defense.  The only remaining federal claim in this case is the § 1983 claim for unlawful detention pursuant to the Fourth Amendment by Plaintiff Christine Jones-Combs against Defendant O'Rourke.

The doctrine of qualified immunity provides "government officials performing discretionary functions . . . [a shield] from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When applicable, qualified immunity is not only a defense to liability, but provides immunity from suit altogether, shielding officials from the burdens of discovery and costs of trial.  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  A defendant bears the burden of establishing that he is entitled to qualified immunity. *See Beers-Capitol v. Whetzel*, 256

F.3d 120, 142 n.15 (3d Cir. 2001).  In answering the question of whether a particular

defendant is entitled to qualified immunity, the Court must first determine whether a

constitutional violation has occurred.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  The

Court must then resolve the issue of whether the constitutional right was clearly

established at the time of the alleged violation. *Id.*  "The relevant, dispositive inquiry in

determining whether a right is clearly established is whether it would be clear to a

reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at

202.  Qualified immunity is an objective question to be decided by the Court as a matter

of law. *Doe v. Groody*, 361 F.3d 232, 238 (3d Cir. 2004).  Further, the United States

Supreme Court has repeatedly stressed the importance of resolving immunity questions

at the earliest possible stages of litigation. *Curley v. Klem*, 298 F.3d 271, 277 (3d Cir.

2002).  Indeed, qualified immunity "provides ample protection to all but the plainly

incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341

(1986).  However, a decision on the issue of qualified immunity would "be premature

when there are unresolved disputes of historical fact relevant to the immunity analysis."

*Wright v. City of Phila.*, 409 F.3d 595, 599 (3d Cir. 2005) (quoting *Curley*, 298 F.3d at

278).

Here, viewing the facts in the light most favorable to Plaintiff, the Court finds that

Defendant O'Rourke's alleged conduct – the pinning of Christine Jones-Combs in her

breast against a wall – could be construed as violating constitutional rights of which a

reasonable person would have known, namely, the right to be free of unlawful seizures.

It is for the jury to resolve the "disputed historical facts material to the qualified immunity

question." *Carswell v. Borough of Homestead*, 381 F.3d 235, 242 (3d Cir. 2004).  Based on the disputed material facts presented here, the Court cannot hold as a matter of law that Defendant O'Rourke is entitled to qualified immunity.  Therefore, Defendant O'Rourke's motion for summary judgment on the basis of qualified immunity as to Plaintiff Christine Jones-Combs' Section 1983 unlawful detention claim will be denied.

## VI.   Supplemental Jurisdiction

Plaintiffs' Complaint alleges several causes of action under Pennsylvania law, namely, assault, battery, false imprisonment, and conspiracy.  As the Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), the Court will consider the pendant state law claims.

### A.   Count V - Assault and Battery

In Pennsylvania, "[a]ssault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person."  In *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994), a case involving an allegation of assault and battery by a police officer, the Supreme Court of Pennsylvania explained that

> A police officer may use reasonable force to prevent interference with the exercise of his authority or the performance of his duty.  In making a lawful arrest, a police officer may use such force as is necessary under the circumstances to effectuate the arrest.  The reasonableness of the force used in making the arrest determines whether the police officer's conduct constitutes an assault and battery.

*Id.*

27

1.      *Assault*

To succeed on an assault claim in Pennsylvania, plaintiff must show that the defendant "intentionally caused an imminent apprehension of a harmful or offensive bodily contact in [p]laintiff." *Lakits v. York*, 258 F. Supp. 2d 401, 407 (E.D. Pa. 2003) (citing *Sides v. Cleland*, 648 A.2d 793, 796 (Pa. Super. Ct. 1994); RESTATEMENT (SECOND) OF TORTS § 21)).  The plaintiff must actually be put in a state of immediate apprehension.  *See* RESTATEMENT (SECOND) OF TORTS § 21.

In Plaintiff Christine Jones-Combs' deposition, she testified that she was not interrogated by the police. (Jones-Combs Dep. 56:16-17, Doc. 87 Ex. 1.)  The evidence demonstrates that Mrs. Jones-Combs was not put in imminent apprehension of harmful or offensive bodily contact by Defendant Romanchick.  Although she testified that he was the officer who detained her husband, she has not presented evidence that he engaged in any conduct to place her in imminent apprehension of harm or offensive conduct. (Jones-Combs Dep. 84:14-18, Doc. 87 Ex. 1.)   Therefore Defendant Romanchick's motion for summary judgment on Plaintiff Jones-Combs assault claim will be granted.

Plaintiff Jones-Combs testified in her deposition regarding when a police officer pushed against her breast and pinned her against a wall.   She testified that an "officer . . . took his forearm and pushed me up against the wall and pinned me in my breast area against the wall." (Jones-Combs Dep. 32:6-9, April 30, 2007, Doc. 87 Ex. 1.)  As noted previously, by inference, it would be possible for a jury to identify this officer as Defendant O'Rourke.  Mrs. Jones-Combs testified that she asked the officer "'why are you holding me against the wall in my breast area?'  And that's when I guess he realized what he was

doing, and he backed off." (Jones-Combs Dep. 33:91-12, Doc. 76 Ex. 5.)  She testified that the time she was pinned against the wall was between one (1) and five (5) seconds. (Jones-Combs Dep. 59:21-60:3, Doc. 76 Ex. 5.)  Such evidence is sufficient to maintain a claim for assault against Defendant Office O'Rourke.  However, there is a question of material fact regarding whether Defendant O'Rourke pinned or pushed Plaintiff Christine Jones-Combs.  When asked if he used physical force on any person, Defendant O'Rourke stated that he assisted Defendant Romanchick in handcuffing Plaintiff Kimm Jones, but does not mention that he used any force against Christine Jones-Combs. (O'Rourke Dep. 10:20-21, April 19, 2007, Doc. 76 Ex. 11.)  Therefore, there is a question of fact regarding whether Defendant O'Rourke placed Plaintiff Christine Jones-Combs in apprehension of harmful or offensive contact.  Defendant O'Rourke's summary judgment motion will be denied as to Christine Jones-Combs' assault claim.

Plaintiff Jones-Combs' deposition testimony also demonstrates evidence of an assault when she was in the hallway of the hotel near Defendant Stelmak.  She alleges that this assault was caused by the presence of the Police dog, Blitz.  There is a question of material fact as to the imminent apprehension of harm to Mrs. Jones-Combs, as demonstrated by her fear of the dog.  (Jones-Combs Dep. 86:5-9, Doc. 87 Ex. 1.) Plaintiff Jones-Combs testified that the officer with the dog was threatening people in the hallway and that the dog was in an attack position.  (Jones-Combs Dep. 37:21-38:1, Doc. 87 Ex. 1.)  She also said that the dog appeared to be very loud and upset.  (Jones-Combs Dep. 78:-24-79:4, Doc. 87 Ex. 1.)  Similarly, Mr. Gregory Sanford stated that the officer with the dog, "kept saying his dog was in attack mode and he was going to start biting." (G. Sanford Dep. 80:2-5, Doc. 76 Ex. 6.)  Officer Stelmak maintained in his

29

deposition that although the dog was barking, Officer Stelmak was not threatening anyone or instigating the dog.  This is a genuine issue of material fact and is therefore a matter for the jury to decide.  Defendant Stelmak's motion for summary judgment on Plaintiff Jones-Combs assault claim will be denied.

Plaintiff Kimm Jones also makes a claim for assault against Defendants Romanchick, O'Rourke, and Stelmak.  In this case, Plaintiff Kimm Jones was arrested by Officer Romanchick, and assisted by Officer O'Rourke.  Plaintiff Jones states that force was used on his person during his arrest.        As stated previously, there is a question of reasonableness regarding the use of force by a police officer during an arrest.  *Renk*, 641 A.2d at 293.  "A police officer may be held liable for assault and battery when a jury determines that the force used in making an arrest is unnecessary or excessive."  *Id.*

Kimm Jones testified that an officer grabbed him, and then two (2) officers had him up against the wall.  (Jones Dep. 38:1-6, Doc. 87 Ex. 2.)  He also stated that an officer punched him in the chest.  (Jones Dep. 37:7-8, Doc. 76 Ex. 4.)  He testified that "[t]here was only one at first, and then another one came over and grabbed my other arm, and they both had me against the wall with my face - one had my head up against, like, smashed up against the wall, and the other one had my arm, like, in the back, like, trying to handcuff me."  (Jones Dep. 38:9-14, Doc. 87 Ex. 2.)  He said he was held against the wall for a few minutes.  (Jones 42:23-15, Doc. 87 Ex. 2.)

When asked if he could identify the officers, he stated that he could not physically describe them or identify them by name.  But, Mr. Jones stated that he saw two (2) police officers coming up the hall upon their arrival, and he related that these officers were the

officers who allegedly assaulted him.  (Jones 34:24-25, Doc. 76 Ex. 4.)  Therefore, a jury could infer that the two (2) officers were Officers Romanchick and O'Rourke, who were the first officers on the scene.

There are questions of material fact for the jury to decide with respect to the assault claim by Mr. Jones against Officers O'Rourke and Romanchick.  It is for a jury to decide whether the force used by the officers was reasonable as per *Renk*.  It is a question for the jury as to whether the force used in the arrest of Plaintiff Jones was unnecessary or excessive.  Therefore, Officer Romanchick and Officer O'Rourke motion for summary judgment on the assault claim by Mr. Jones will be denied.

As discussed in Christine Jones-Combs' claim for assault, Kimm Jones' claim for assault against Defendant Stelmak is based upon Defendant Stelmak's use of the Police dog Blitz.  Mr. Jones testified that the dog was barking.  (Jones Dep. 40:12-13, Doc. 76 Ex. 2.)  When asked about the dog, he stated that he did not recall hearing the dog handler state that the dog was trained to bite. (Jones Dep. 58:9-13, Doc. 76 Ex. 2.)  Officer Stelmak maintained in his deposition that although the dog was barking, Officer Stelmak was not threatening anyone or instigating the dog.  Therefore, the facts are consistent as to Mr. Jones' recollection of the dog.  There is no evidence that Mr. Jones was placed in imminent apprehension by Defendant Stelmak or his use of Police Dog Blitz.  Therefore, Defendant Stelmak's motion for summary judgment on the assault claim in Count V as to Plaintiff Kimm Jones will be granted.

_____2.    *Battery*

31

To support a claim for the intentional tort of battery in Pennsylvania, a plaintiff must show that: (1) the defendant "[acted] intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (2) an offensive contact with the person of the other directly or indirectly results." RESTATEMENT (SECOND) OF TORTS § 18.  Some physical contact between the defendant and the plaintiff must occur, or a plaintiff's battery claim fails. *Id.* Furthermore, Plaintiffs must specifically identify the officers accused of each tort against them. *Seward v. City of Philadelphia*, Civ. A. No. 00-3563, 2002 WL 563580, at *2 (E.D. Pa. Apr. 11, 2002).

There is no evidence that Defendants Romanchick or Stelmak made physical contact with Plaintiff Christine Jones-Combs.  Therefore, summary judgment will be granted in favor of Defendants Romanchick and Stelmak with respect to Plaintiff Christine Jones-Combs' battery claim in Count V.

As discussed in her assault claim, Plaintiff Christine Jones-Combs raises a claim of battery against Defendant O'Rourke.  Plaintiff Jones-Combs testified that an "officer . . . took his forearm and pushed me up against the wall and pinned me in my breast area against the wall." (Jones-Combs Dep. 32:6-9, Apr. 30, 2007, Doc. 87 Ex. 1.)  As noted previously, by inference, it would be possible for a jury to identify this officer as Defendant O'Rourke.  When asked if he used physical force on any person, Defendant O'Rourke stated that he assisted Defendant Romanchick in handcuffing Plaintiff Kimm Jones, but does not mention that he used any force against Christine Jones-Combs.  (O'Rourke Dep. 10:20-21, Apr. 19, 2007, Doc. 76 Ex. 11.)  Therefore, there is a question of fact

regarding whether Defendant O'Rourke made physical contact with Plaintiff Jones-Combs.  Defendant O'Rourke's summary judgment motion will be denied as to Christine Jones-Combs' battery claim.

As stated previously, Plaintiff Kimm Jones makes a battery claim based upon the contact made during his arrest.  The same analysis applies here.  As there are questions of material fact as to whether the use of force by Officers Romanchick and O'Rourke was reasonable in making the arrest, the summary judgment motion by Defendants Romanchick and O'Rourke will be denied as to Jones' battery claim.

There is no evidence that Defendant Stelmak made physical contact with Plaintiff Kimm Jones.  Therefore, summary judgment will be granted in favor of Defendant Stelmak with respect to Plaintiff Kimm Jones' battery claim in Count V.

B.      Count VI - False Imprisonment

A claim of false imprisonment under Pennsylvania law requires: "(1) the detention of another person, and (2) the unlawfulness of such detention." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994).  An actor is liable for false imprisonment if "(1) he acts intending to confine the other or a third person within boundaries fixed by the actor and (2) his act directly or indirectly results in such a confinement of the other, and (3) the other is conscious of the confinement or is harmed by it." *Crivellaro v. Pa. Power and Light Co.*, 24 Pa.D.&C.3d 590, 595 (Pa. Com. Pl. 1982).

A plaintiff's confinement must be complete.  *Caswell v. BJ's Wholesale Co.*, 5 F. Supp. 2d 312, 319 (E.D. Pa. 1998).  False imprisonment does not occur if "a known, safe means of escape, involving only a slight inconvenience, exists." *Id.*  "[U]nless physical

force or physical barriers are used, there must be some sort of verbal threat to effect the plaintiff's confinement."   *Id.*  A plaintiff's belief that he is not free to leave is insufficient to support a claim of false imprisonment.  *Id.*  Rather, a plaintiff must make "some 'attempt to determine whether his belief that his freedom of movement has been curtailed has basis.'" *Id.*  (citing *Chicarelli v. Plymouth Garden Apartments*, 551 F. Supp. 532, 540-41 (E.D. Pa. 1982)).  This attempt may be done, for example, by making a failed request to leave.  *Id.*

Plaintiff Christine Jones-Combs alleges false imprisonment against both Defendants Romanchick and O'Rourke.  As stated previously, there is no evidence that Defendant Romanhchick had any interaction with Christine Jones-Combs, other than the interaction based upon Kimm Jones' arrest. (Jones-Combs Dep. 31:12-15; 32 6-9, Doc. 87 Ex. 1.)  There is no evidence that Defendant Romanchick detained or confined Plaintiff Jones-Combs.  She testified that when her husband was handcuffed and arrested, she asked if she could go with him to the lobby, and the police allowed her to do so.  (Jones-Combs Dep. 38:4-6, Doc. 87 Ex. 1.)  Therefore, summary judgment will be granted as to Defendant Romanchick with respect to Plaintiff Jones-Combs' false imprisonment claims.  Summary judgment with respect to Defendant O'Rourke will also be granted.  Plaintiff Jones-Combs testified that an officer, who could be inferred to be Defendant O'Rourke, pushed against her breast and pinned her against a wall.  (Jones-Combs Dep. 32:6-9, April 30, 2007, Doc. 87 Ex. 1.)  Mrs. Jones-Combs testified that she asked the officer "'why are you holding me against the wall in my breast area?'  And that's when I guess he realized what he was doing, and he backed off."  (Jones-Combs

34

Dep. 33:91-12, Doc. 76 Ex. 5.)  She testified that she was pinned against the wall for

between one (1) and five (5) seconds.  (Jones-Combs Dep. 59:21-60:3, Doc. 76 Ex. 5.)

Summary judgment will be granted in this instance, because Mrs. Jones-Combs made

"some 'attempt to determine whether his belief that his freedom of movement has been

curtailed has basis.'"  *Caswell*, 5 F. Supp. 2d at 319.  Such an attempted includes a failed

request to leave.  *Id.*  However, in this case, there was no "failed attempt."  In fact, when

Plaintiff Jones-Combs asked why she was being pushed against the wall, the Defendant

released her.  A means of escape did exist, as Plaintiff Jones-Combs requested release,

which was granted. Therefore, Defendant O'Rourke's motion for summary judgment on

the false imprisonment claim by Plaintiff Jones-Combs will be granted.

Defendant Stelmak's actions with respect to Police dog Blitz were previously

discussed in Plaintiff Christine Jones-Combs' assault claim.  However, Plaintiff Christine

Jones-Combs' claim for false imprisonment cannot stand because she failed to make an

attempt to see if her movement was restricted based upon the presence of the dog.  She

did not make any request that Defendant Stelmak move the dog.  Nor did she attempt to

step around the dog.  The belief that she may have been imprisoned by the presence of

the dog is insufficient to support a claim of false imprisonment.  Therefore, Defendant

Stelmak's motion for summary judgment will be granted with respect to Plaintiff Christine

Jones-Combs' false imprisonment claim in Count VI.

Defendant Kimm Jones also brings a claim of false imprisonment against

Defendant Officers O'Rourke and Romanchick.  However, in a false imprisonment claim,

"[a]n arrest based upon probable cause would be justified, regardless of whether the

individual arrested was guilty of not." *Renk*, 537 A.2d at 293.  In a case where an arrest has been made, a police officer may be held liable "for false imprisonment when a jury concludes that [the police officer] did not have probable cause to make an arrest." *Id.*  In this case, the Court has already established that there was probable cause for arrest, as Plaintiff Kimm Jones plead guilty to the a charge of disorderly conduct.  (Doc. 76 Ex. 2.) Therefore, summary judgment on the false imprisonment claim will be granted in favor of Defendants O'Rourke and Romanchick because a guilty plea carries with it an admission of probable cause for arrest.  *Shilling v. Brush*, Civ. A. No. 4:05-CV-871, 2007 WL 210802, at *20 (M.D. Pa. Jan. 22, 2007) (Jones, J.); *Hamidian v. Occulto*, 854 F. Supp. 350, 354 (M.D. Pa. 1994) (Vanaskie, J.); *Brown v. Rogers*, Civ. A. No. 87-6419, 1990 WL 11657, at *1 (E.D. Pa. Feb. 08, 1990).

Defendant Stelmak's actions with respect to Police dog Blitz were previously discussed in Plaintiff Kimm Jones' assault claim.  Plaintiff Kimm Jones' claim for false imprisonment cannot stand because there is no evidence that his movement was restricted based upon the presence of the dog.  He failed to make an attempt to see if his movement was restricted based upon the presence of the dog.  He did not make any request that Defendant Stelmak move the dog.  Nor did he attempt to step around the dog.  The belief that Mr. Jones may have been imprisoned by the presence of the dog is insufficient to support a claim of false imprisonment.  Therefore, Defendant Stelmak's motion for summary judgment will be granted with respect to Plaintiff Kimm Jones' false imprisonment claim in Count VI.

C.      Count VII - Conspiracy

A Pennsylvania state conspiracy claim consists of three elements: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for a lawful purpose, (2) an intent to injure without justification, and (3) an overt act 'done in pursuance of the common purpose or design,' and resultant actual legal damage." *Academy Plaza L.L.C.1 v. Bryant Asset Mgmt.*, 2006 WL 1652687, at *13 (Pa. Com. Pl. 2006) (quoting *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (Pa. Super. Ct. 1979)).

"A single entity cannot conspire with itself and, similarly, agents of a single entity cannot conspire among themselves." *Id*. (quoting *Thomspon*, 412 A.2d at 472); *see also Shingara v. Skiles*, Civ. A. No. 1:04-CV-0621, 2007 WL 210800 (M.D. Pa. Jan. 24, 2007) (Conner, J.) (citing *Lackner v. Glosser*, 892 A.2d 21, 35 (Pa. Super. Ct. 2006) (finding that because all defendants were members of the state police, they could not be liable for Pennsylvania civil conspiracy).

Plaintiffs Kimm Jones and Christine Jones-Combs claim that Defendants Romanchick, O'Rourke, and Stelmak conspired to pursue a meritless investigation of a fight after there was no objective evidence of such a fight.  However, Defendants Romachick, O'Rourke, and Stelmak are all members of the Scranton Police Department. As agents of this single entity, they legally cannot conspire with one another.  Therefore, Defendants' motion for summary judgment on Count VII will be granted.

**CONCLUSION**

37

For the reasons stated above, Defendants' motion for summary judgment will be granted in part and denied in part.  The municipal defendants were previously dismissed from the case, and therefore no failure to train claim remains in Counts I, II, and III.  The failure to train claim does not create a claim for supervisory liability, as there were no allegations of any of the Defendants acting as a supervisor, nor was any evidence presented that any of the Defendants acted in a supervisory capacity.  Defendants' motion for summary judgment will be granted as to the Section 1981 claims in Counts I and II, as Plaintiffs failed to present evidence of racial animus or discriminatory intent. Summary judgment will be granted in favor of all Defendants as to Plaintiff Kimm Jones' unlawful detention and investigation claim in Count III, because probable cause has been established as to Plaintiff Kimm Jones.  Summary judgment will also be granted for Defendants Stelmak and Romanchick, because there is no evidence that Plaintiff Christine Jones-Combs was seized by these Defendants.  However, summary judgment will be denied as to Defendant O'Rourke on Christine Jones-Combs' unlawful detention claim, as there are questions of material fact as to whether she was seized.  Defendant O'Rourke's motion for summary judgment pursuant to qualified immunity on this claim will be denied.  Defendants' motion for summary judgment on the Count IV conspiracy claims will be granted, as there is no evidence of any agreement or concerted action, or any evidence that could lead to an inference of an agreement or concerted action.

Defendant Romanchick's motion for summary judgment on Count V's assault claim will be granted as to Christine Jones-Combs, as there is no evidence that he placed her in imminent apprehension of harm or offensive contact.  As there is a question of material fact regarding Defendant Stelmak's intent, and Christine Jones-Combs'

imminent apprehension of harm or offensive contact, Defendant Stelmak's motion for summary judgment on the assault claim in Count V will be denied.  Defendant O'Rourke's motion for summary judgment on Christine Jones-Combs' assault claim will be denied, as there are questions of fact regarding whether there was imminent apprehension of harm or conduct, and whether there was intent on the part of Defendant O'Rourke. Defendants Romanchick and O'Rourke's motion for summary judgment on Count V's assault claim by Plaintiff Kimm Jones will be denied, as there are material questions of fact regarding Defendants' intent, as well as whether there was imminent apprehension on the part of Kimm Jones.  There is also a question of material fact as to whether the officers' use of force was reasonable in Jones' arrest.  Defendant Stelmak's motion for summary judgment will be granted as to Plaintiff Jones' assault claim, as there is no evidence that Mr. Jones was placed in imminent apprehension of harmful contact.

Defendants Romanchick and Stelmak's motion for summary judgment on Count V's battery claim will be granted as to Plaintiff Christine Jones-Combs, as there is no evidence of physical contact between Jones-Combs and these Defendants.  Defendant O'Rourke's motion for summary judgment as to Jones-Combs' battery claim will be denied, as there are questions of material fact regarding whether he used force on the Plaintiff.  Defendant Stelmak's motion for summary judgment on Plaintiff Kimm Jones' battery claim in Count V will be granted, as there is no evidence that this Defendant made contact with Plaintiff Kimm Jones.  Defendants O'Rourke and Romanchick's motion for summary judgment on Plaintiff Kimm Jones' battery claim in Count V will be denied, as there are questions of material fact regarding the reasonableness of force used in his arrest.  Defendants Romanchick, O'Rourke, and Stelmak's motion for

39

summary judgment will be granted as to Plaintiff Christine Jones-Combs' false imprisonment claim in Count VI.  Defendants Romanchick, O'Rourke, and Stelmak's motion for summary judgment will be granted as to Plaintiff Kimm Jones' false imprisonment claim in Count VI.  Defendants Romanchick, O'Rourke, and Stelmak's motion for summary judgment will be granted as to Count VII, as Plaintiffs may not pursue a conspiracy claim against these Defendants due to the single entity doctrine.

An appropriate Order follows.


June 25, 2008                           /s/ A. Richard Caputo
Date                                    A. Richard Caputo
                                        United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

KIMM JONES AND CHRISTINE JONES-
COMBS,

      Plaintiffs,

            v.

OFFICER JOHN O'ROURKE, et al.,

      Defendants.

NO. 3:06-CV-0738

(JUDGE CAPUTO)

## ORDER

**NOW**, this  25th  day of June 2008, **IT IS HEREBY ORDERED** that Defendants

Romanchick, Stelmak, and O'Rourke's Motion for Summary Judgment (Doc. 74) is

**GRANTED** in part and **DENIED** in part as follows:

(1)    Defendants Romanchick, Stelmak, and O'Rourke's Motion for Summary Judgment is **GRANTED** as to the failure to train claims by Plaintiffs Kimm Jones and Christine Jones-Combs in Counts I, II, and III.

(2)    Defendants Romanchick, Stelmak, and O'Rourke's Motion for Summary Judgment is **GRANTED** as to Plaintiffs Kimm Jones and Christine Jones-Combs in Count I.

(3)    Defendants Romanchick, Stelmak, and O'Rourke's Motion for Summary Judgment is **GRANTED** as to Plaintiffs Kimm Jones and Christine Jones-Combs in Count II.

(4)    Defendants Romanchick, Stelmak, and O'Rourke's Motion for Summary Judgment is **GRANTED** as to Plaintiff Kimm Jones in Count III.

(5)    Defendants Stelmak and Romanchick's Motion for Summary Judgment is **GRANTED** as to Plaintiff Christine Jones-Combs in Count III.  Defendant O'Rourke's Motion for Summary Judgment is **DENIED** as to Plaintiff Christine Jones-Combs in Count III with respect to the Section 1983 unlawful detention claim.

(6)    Defendants Romanchick, Stelmak, and O'Rourke's Motion for Summary

Judgment is **GRANTED** as to Plaintiffs Kimm Jones and Christine Jones-Combs in Count IV.

(7)    Defendant O'Rourke's motion for summary judgment based upon qualified immunity as to the Section 1983 claim for unlawful detention by Christine Jones-Comb is **DENIED**.

(8)    Defendants Romanchick's Motion for Summary Judgment is **GRANTED** as to Plaintiff Christine Jones-Combs' assault claim in Count V.  Defendants O'Rourke and Stelmak's Motion for Summary Judgment is **DENIED** as to Plaintiff Christine Jones-Combs' assault claim in Count V.

(9)    Defendant Stelmak's Motion for Summary Judgment is **GRANTED** as to Plaintiff Kimm Jones' assault claim in Count V.  Defendants Romanchick and O'Rourke's Motion for Summary Judgment is **DENIED** as to Plaintiff Kimm Jones' claim for assault in Count V.

(10)    Defendants Romanchick and Stelmak's Motion for Summary Judgment is **GRANTED** as to Plaintiff Christine Jones-Combs' battery claim in Count V. Defendant O'Rourke's Motion for Summary Judgment is **DENIED** as to Plaintiff Christine Jones-Combs' battery claim in Count V.

(11)    Defendants Stelmak's Motion for Summary Judgment is **GRANTED** as to Plaintiff Kimm Jones' battery claim in Count V.  Defendants O'Rourke and Romanchick's Motion for Summary Judgment is **DENIED** as to Plaintiff Kimm Jones' battery claim Count V.

(12)    Defendants Romanchick, Stelmak, and O'Rourke's Motion for Summary Judgment is **GRANTED** as to Plaintiffs Kimm Jones and Christine Jones-Combs' false imprisonment claim in Count VI.

(13)    Defendants Romanchick, Stelmak, and O'Rourke's Motion for Summary Judgment is **GRANTED** for all Defendants against Plaintiffs Kimm Jones and Christine Jones-Combs in Count VII.

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge